UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-10691-RWZ

BIOCHEMICS, INC.,
and JOHN MASIZ

v.

AXIS REINSURANCE COMPANY, *et al.*

MEMORANDUM OF DECISION

August 7, 2013

ZOBEL, D.J.

In December 2012, the Securities and Exchange Commission ("SEC") filed an enforcement action against plaintiffs BioChemics, Inc. ("BioChemics") and John Masiz, alleging they had violated the federal securities laws. Plaintiffs have now sued defendant AXIS Reinsurance Company ("AXIS"),[1] which issued their directors and officers ("D&O") liability insurance. Plaintiffs claim their D&O insurance policy obligates AXIS to defend them against the pending enforcement action, and against subpoenas issued by the SEC in January and March 2012. AXIS has refused to provide plaintiffs any defense against the subpoenas or against the enforcement action, claiming those matters are not covered under plaintiffs' policy. Plaintiffs have now moved for summary judgment, and AXIS has responded by moving for discovery under Federal Rule of Civil

---

[1] Plaintiffs have also brought claims in this same action against two other defendants, namely their insurance brokerage firm and an individual broker. Those claims are not at issue here.

Procedure 56(d).

**I. Background**

BioChemics is a specialty pharmaceutical company focused on transdermal drug delivery systems, including medicated lotions. Masiz is BioChemics's president and chief executive officer.

In May 2011 and September 2011, the SEC served document subpoenas on BioChemics requesting a broad range of documents regarding the company's operations from 2007 on. Those subpoenas indicated that the SEC had issued a formal order authorizing the pending investigation. At the time, BioChemics held a year-long D&O policy issued by Greenwich Insurance Company, a member of the XL Group. That policy was written on a claims-made basis, meaning it only covered claims made against BioChemics or its officers during the policy period.

In November 2011, when its D&O policy expired, BioChemics did not purchase a new policy from the same insurers; instead, it took out a new policy from AXIS.[2] The new AXIS policy was also issued on a claims-made basis, covering claims first made between November 13, 2011 and November 13, 2012. Section V.A of the policy, titled "Limits of Liability," contained the following language:

> All Claims, including all D&O Claims . . . arising from the same Wrongful Act . . . and all Interrelated Wrongful Acts shall be deemed one Claim and such Claim shall be deemed to be first made on the earlier date that: (1) any of the Claims is first made against an Insured under this Policy or any prior policy . . . .

---

[2] The circumstances surrounding BioChemics's switch to a new insurer are the subject of plaintiffs' claims against the other defendants in this case.

Docket # 30, Ex. A (Policy), § V.A.³ The same section also stated the basic principle of a claims-made policy: "Coverage under this Policy shall apply only with respect to <u>Claims</u> deemed to have been first made during the <u>Policy Period</u> and reported in writing to the Insurer in accordance with the terms herein." <u>Id.</u> The policy defined a "<u>Claim</u>" broadly to include, inter alia, any "written demand against any <u>Insured</u> for monetary or nonmonetary relief," or any "civil, arbitration, administrative or regulatory proceeding against any <u>Insured</u> commenced by . . . the filing of a notice of charge, investigative order, or like document." <u>Id.</u> § III.B.2(a), (b)(ii).

In January 2012, two months after the AXIS policy came into effect, the SEC served deposition subpoenas on Masiz and two other individuals. In March 2012, the SEC served document subpoenas on BioChemics and Masiz. Those subpoenas all issued under the same SEC matter identification and number—<u>In the Matter of BioChemics, Inc. (B-02641)</u>—that the 2011 subpoenas had. The March document subpoena to Masiz also emphasized that Masiz was not required to produce any documents that had already been provided in response to the 2011 subpoenas to Biochemics. <u>See</u> Docket # 30, Ex. G, Subpoena Attachment at 3-4.

BioChemics notified AXIS of the January and March 2012 subpoenas. However, AXIS denied coverage. It took the position that the entire SEC investigation was a single "claim" that was first made in May 2011, when the SEC issued its first document subpoena to BioChemics—before plaintiffs' AXIS policy took effect.

---

³ Underlined terms, which appear in bold type in the policy itself, are defined elsewhere in the agreement.

The SEC filed its enforcement action in December 2012, alleging that from 2009 until mid-2012 BioChemics and Masiz had engaged in a fraudulent scheme to sell BioChemics securities by misleading investors about the company's value. Some of the misrepresentations alleged in the SEC complaint took place before the SEC issued its first document subpoena in May 2011. Others, including alleged misrepresentations about a clinical trial of BioChemics's topical ibuprofen product, took place after the May and September 2011 subpoenas had issued.

AXIS has taken the same position with respect to the SEC enforcement action as it did with respect to the 2012 subpoenas: namely, it has refused to defend BioChemics and Masiz, asserting that the enforcement action is part of a single "claim" that was first made when the first SEC subpoena issued in May 2011, before the AXIS policy period began.

Plaintiffs now move for partial summary judgment, insisting that the present record is enough to conclusively determine whether AXIS owes them a duty to defend. In response, AXIS has moved for discovery under Rule 56(d), arguing that it is entitled to examine all the communications between plaintiffs and the SEC to determine whether it has any duty to defend.

## II. Analysis

Rule 56(d) applies when a party opposing summary judgment shows that for lack of time or lack of discovery, "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Under those circumstances, the court may deny the summary judgment motion, defer consideration, provide additional time for discovery, or issue

4

any other appropriate relief. Id. To invoke Rule 56(d), the party must submit a statement that "(i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion." Nieves-Romero v. United States, 715 F.3d 375, 381 (1st Cir. 2013) (quoting Velez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir. 2004)).

Here, the parties dispute only whether the facts that AXIS seeks would influence the outcome of plaintiffs' summary judgment motion. Plaintiffs insist that AXIS will owe them a defense no matter what further discovery might reveal; AXIS disagrees.

**A. Extrinsic Evidence**

Plaintiffs argue their D&O insurance policy establishes on its face that AXIS owes them a duty to defend against the SEC proceedings. The relevant insuring clause of the policy states that AXIS will pay "all Loss on behalf of any Insured arising from any D&O Claim for a Wrongful Act . . . first made against such Insured . . . during the Policy Period." Policy § I. Because the defined term "Loss" includes the cost of defending against claims, see id. §§ III.A.2, III.A.7, plaintiffs argue that AXIS must pay for their defense against the 2012 subpoenas and the subsequent SEC enforcement action.

AXIS counters that the 2012 subpoenas and the enforcement action are part of a single, ongoing claim that was "first made" before the policy period began. As described above, the policy provides that "all D&O Claims . . . arising from the same

5

Wrongful Act . . . and all Interrrelated Wrongful Acts shall be deemed one Claim." Id. § V.A. It defines the term "Interrelated Wrongful Acts" to mean "any and all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes." Id. § III.A.6. AXIS contends that after discovery, it could prove that the "Wrongful Acts" underlying the 2011 subpoenas shared a common nexus with the "Wrongful Acts" underlying the 2012 subpoenas and the enforcement action. If so, AXIS argues, any claims arising from those "Interrelated Wrongful Acts" would be deemed a single "Claim" that arose when the first subpoena was filed—before the policy period began. That would place the entire SEC investigation outside the scope of AXIS's duty to defend under the policy. AXIS therefore seeks discovery of materials related to the plaintiffs' dealings with the SEC, to show that the entire investigation arises from a single set of "Interrelated Wrongful Acts."

Plaintiffs respond with a line of cases holding that in general, insurers cannot rely on extrinsic evidence to deny their duty to defend. Instead, normally speaking, "the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions." Fed. Ins. Co. v. Raytheon Co., 426 F.3d 491, 496 (1st Cir. 2005) (quoting Cont'l Cas. Co. v. Gilbane Bldg. Co., 461 N.E.2d 209, 212 (Mass. 1984)). That rule establishes, for instance, that an insurer cannot avoid its duty to defend by claiming that the suit against its insured lacks merit. See Bos. Symphony Orchestra v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1159 (Mass. 1989) ("The merits of the claim are, likewise,

6

not a ground upon which an insurer can refuse to defend its insured. . . . [T]he right to a defense inures even if any of the allegations of the suit are groundless, false, or fraudulent." (quotation marks omitted)).

Extrapolating from this rule, plaintiffs argue that AXIS can only avoid its duty to defend if the later SEC subpoenas and complaint themselves make clear, within their own four corners, that they arise from the same "Interrelated Wrongful Acts" as the earlier subpoenas. Cf. Raytheon, 426 F.3d at 496-97 (determining the scope of a prior and pending litigation exclusion by looking to the allegations of the complaints at issue); Ryan v. Nat'l Union Fire Ins. Co., 692 F.3d 162, 167-68 (2d Cir. 2012) (under Connecticut law, finding insurer had a duty to defend where based solely on the allegations in the complaint it was "possible" that not all the alleged losses arose from earlier wrongful acts). According to plaintiffs, no factual discovery is necessary because AXIS's duty to defend rests solely on the subpoenas and the complaint.

AXIS, unsurprisingly, takes a different view. It argues that the rule against using extrinsic evidence applies only where the insurer seeks to challenge the allegations of the third party's complaint, not where the insurer is challenging an "extrinsic fact . . . that will not be litigated at the trial of the underlying action." Farm Family Mut. Ins. Co. v. Whelpley, 767 N.E.2d 1101, 1104 (Mass. App. Ct. 2002). That approach finds support in the case law. For instance, the First Circuit has held—applying Maine law—that a court may look to extrinsic evidence to determine whether the insured party under a claims-made policy timely reported the claim. Edwards v. Lexington Ins. Co., 507 F.3d 35, 40-41 (1st Cir. 2007). It stated that the rule against extrinsic evidence

7

"cannot be rigidly applied in the context of claims-made policies where the determinative event is the timing of the claim, a fact that likely will be . . . irrelevant to the merits of the underlying tort suit, and therefore absent from the pleadings." Id. at 41. So too here. The determinative question is whether the later subpoenas and enforcement action arose from alleged wrongful acts that shared a common nexus with the alleged wrongful acts that triggered the earlier subpoenas. The existence vel non of that common nexus is not relevant to the validity of the subpoenas or the merits of the enforcement action, and is not likely to appear on the face of the subpoenas or the complaint. So under the First Circuit's reasoning in Edwards, AXIS should be entitled to prove it by extrinsic evidence. See also Whelpley, 767 N.E.2d at 1104 (allowing the insurer to prove by extrinsic evidence that the underlying accident occurred off the insured's premises and so was not covered by the policy).

Though the question is close, AXIS has the better of the argument. An insurer may not use extrinsic evidence to avoid its duty to defend by challenging the allegations in the complaint; instead, the insurer must defend if the allegations in the complaint are reasonably susceptible to an interpretation that states a claim within the scope of the policy. See Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 340 (Mass. App. Ct. 1983). But an insurer may use extrinsic evidence to deny a duty to defend based on facts irrelevant to the merits of the underlying litigation, such as whether the claim was first made during the policy period, whether the insured party reported the claim to the insurer as required by the policy, or whether the underlying wrongful acts were related to prior wrongful acts. See Edwards, 507 F.3d at 40-41; Brown v. Am. Int'l

Grp., 339 F. Supp. 2d 336, 346-47 (D. Mass. 2004) (citing extrinsic evidence in finding, after a full bench trial, that defendant insurer had failed to prove the wrongful acts at issue were related to prior wrongful acts). The discovery AXIS requests may therefore affect the outcome of plaintiffs' summary judgment motion.

### B. Interrelated Wrongful Acts

Next, plaintiffs turn to the fact that the complaint in the SEC enforcement action alleges certain misrepresentations that took place after the 2011 subpoenas issued. Specifically, the SEC complaint alleges that beginning on November 2011, plaintiffs made several misrepresentations about the results of a clinical trial for a topical ibuprofen cream being developed by BioChemics. Plaintiffs argue that because these alleged misrepresentations occurred after the earlier SEC subpoenas, they cannot be interrelated with the wrongful acts underlying the earlier subpoenas.

That argument fails. As noted above, the policy defines "Interrelated Wrongful Acts" to mean "any and all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes." Policy § III.A.6. Therefore, the question is not whether the earlier subpoenas sought information about the later ibuprofen-related misrepresentations; they obviously did not. Instead, the question is whether the earlier subpoenas sought information about wrongful acts that shared a "common nexus" with the later ibuprofen-related misrepresentations. That question cannot be resolved until the parties have taken

sufficient discovery.[4] Cf. Brown, 339 F. Supp. 2d at 346-47; Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 871 N.E.2d 418, 430 (Mass. 2007) ("While we cannot say that the underwriters will be unable to show that the claims were 'interrelated' in any circumstances, they have not done so on the record before us.").[5]

### C. Limits of Liability

Next, plaintiffs argue that because section V.A of the policy is titled "Limits of Liability," it should be interpreted to limit the total amount of coverage but not to act as a complete bar to coverage. They rest on the well-established principle that when construing language in an insurance policy, a court must look to what an objectively reasonable insured party would expect to be covered based on the policy language. See W. Alliance Ins. Co. v. Gill, 686 N.E.2d 997, 998 (Mass. 1997).

Here, however, the language at issue is unambiguous. It states clearly that all claims based on interrelated wrongful acts shall be deemed one claim, and that the resulting single claim shall be deemed first made when the first underlying claim was made (or when an insured party first provided notice of the underlying facts). The final sentence of section V.A then unambiguously states its intent to exclude certain claims from coverage: "Coverage under this Policy shall apply only with respect to Claims deemed to have been first made during the Policy Period and reported in writing to the

---

[4] I note that the SEC complaint strongly indicates the relevant wrongful acts were interrelated, since it alleges that the ibuprofen-related misrepresentations were just one part of a larger fraudulent scheme dating back to 2009. But I naturally do not decide that issue at this time.

[5] Plaintiffs also argue that each later subpoena constitutes a separate claim under the policy because each is a new "written demand against an Insured for monetary or non-monetary relief." Policy § III.B.2.a. But the important question is whether all of these separate claims are deemed a single claim because they all arise from interrelated wrongful acts. See id. § V.A.

Insurer in accordance with the terms herein." Policy § V.A; see also id. at 1 (stating, in bold print and in all capitals, that the policy covers only claims first made during the policy period). Given that language, a reasonable insured could not have ignored that section V.A of the policy bars coverage for a claim deemed to be first made before the policy period—including any later claims based on the same interrelated wrongful acts.

### D. Masiz

Finally, plaintiffs argue that the 2011 subpoenas cannot be considered prior claims against Masiz, because they were only directed to BioChemics. AXIS responds that it cannot assess whether any relevant prior claims were filed against Masiz until it discovers the full extent of the prior communication between plaintiffs and the SEC. That response has merit. Any written demands on Masiz made before the policy period began would potentially be relevant to the scope of AXIS's duty to defend. AXIS is therefore entitled to discover the relevant prior communications between plaintiffs and the SEC, and the scope of the SEC's prior investigation.[6]

### E. Ongoing Defense Costs

Finally, plaintiffs argue that AXIS should be required to provide plaintiffs a defense until the scope of its duty to defend is conclusively determined. Of course, when there is a legitimate dispute about an insurer's duty to defend, the insurer will often provide a defense under a reservation of rights. See, e.g., Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 16 (1st Cir. 2012) (noting the defendant insurers had provided a

---

[6] I need not now decide, and do not now decide, whether AXIS could rely on the 2011 subpoenas alone as previous claims that would justify denying coverage to Masiz.

11

defense "[s]ubject to a reservation of rights because of potential coverage issues"). Some states may even require that course. See, e.g., Axis Reinsurance Co. v. Bennett, Civil Action No. 07-7924-GEL, 2008 WL 2600034, at *2 (S.D.N.Y. June 27, 2008) (holding that New York law generally requires insurers to advance defense expenses where coverage is disputed); cf. Little v. MGIC Indem. Corp., 836 F.2d 789, 793-94 (3d Cir. 1987) (requiring insurer to advance costs under Pennsylvania law based on the specific policy at issue); Assoc. Elec. & Gas Ins. Servs. v. Rigas, 382 F. Supp. 2d 685, 699-700 (E.D. Pa. 2004) (same). However, plaintiffs cite no Massachusetts law requiring an insurer to defend the insured pending resolution of coverage issues, and I have found none. Instead, Massachusetts apparently permits an insurer to refuse to defend its insured; the insurer simply risks liability for the defense costs that the insured party incurs (which may be higher than if the insurer had provided a defense). See, e.g., Preferred Mut. Ins. Co. v. Gamache, 686 N.E.2d 989, 991 (Mass. 1997). In addition, the insurer risks liability for "the reasonable attorney's fees and expenses incurred [by the insured] in successfully establishing the insurer's duty to defend under the policy." Id. at 993.

In sum, nothing in Massachusetts law or in the policy itself requires AXIS to provide an interim defense while the issue of coverage is being decided. It would therefore be inappropriate to order that relief.

**F. Resolution**

Given the guidance provided by this opinion, plaintiffs may wish to present new arguments for summary judgment after discovery. Therefore, the most appropriate

decision is to deny plaintiffs' motion for partial summary judgment without prejudice. See Fed. R. Civ. P. 56(d)(1). The parties can then proceed with discovery.

### III. Conclusion

Plaintiffs' motion for partial summary judgment (Docket # 28) and motion to stay discovery (Docket # 32) are DENIED WITHOUT PREJUDICE. AXIS's Rule 56(d) motion (Docket # 37) is ALLOWED to that extent. The parties shall proceed with discovery.

AXIS's motion for leave to file a reply brief (Docket # 43) is DENIED.


|  August 7, 2013  |         /s/Rya W. Zobel         |
|---|---|
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |