UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-10691-RWZ

BIOCHEMICS, INC., and JOHN MASIZ

v.

AXIS REINSURANCE COMPANY,
BROWN & BROWN OF NEW YORK, INC.,
and JOHN P. RAUCCI

MEMORANDUM OF DECISION

September 28, 2017

ZOBEL, S.D.J.

In 2011, the Securities and Exchange Commission ("SEC") issued a formal order directing an investigation of plaintiffs BioChemics, Inc. ("BioChemics"), and its founder John Masiz. BioChemics made a claim under its directors and officers ("D&O") liability insurance policy for defense costs arising out of the SEC investigation and resulting enforcement action. After their D&O carrier, AXIS Reinsurance Company ("AXIS"), denied that claim, plaintiffs brought this suit.

I allowed AXIS's motion for summary judgment, see Docket # 88, at 5-6. Plaintiffs seek damages, fees, and costs from the remaining defendants, BioChemics's insurance broker Brown & Brown of New York, Inc. ("Brown & Brown"), and insurance producer John P. Raucci. Claiming that defendants' handling of their account resulted in the denial of D&O coverage for the SEC action, plaintiffs allege negligence, breach of fiduciary duty, and violations of Massachusetts General Laws chapter 93A. Defendants move for summary judgment on Counts II through VII. Docket # 108.

I.  **Factual Background**

I summarize the relevant facts in the light most favorable to plaintiffs, the non-moving parties.  See Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 172 (1st Cir. 2015).

BioChemics is a specialty pharmaceutical company focused on transdermal drug delivery products.  Masiz was the president and chief executive officer of BioChemics at all times relevant to this action.  BioChemics purchased its first D&O coverage in 2005 from Brown & Brown's corporate predecessor through a consultant named Greg Kroning.  After Kroning's 2009 departure from what was by then Brown & Brown, Raucci was designated the producer on the BioChemics account. Despite this designation, the parties agree that Raucci has had no personal involvement in the account.

A.  **The D&O Policies**

Brown & Brown obtained for plaintiffs from XL Insurance a D&O policy providing coverage from November 13, 2010, to November 13, 2011 ("the XL policy").  The XL policy was written on a claims made basis, meaning it only covered claims made against BioChemics during the policy period.  As the expiration date of the XL policy approached, Brown & Brown informed plaintiffs that because XL would be restricting D&O coverage and increasing premiums in the coming year, it recommended renewing with a different carrier.  As part of the renewal process, Brown & Brown consulted a wholesale broker, who asked XL for a report of any claims BioChemics had made

during the policy period. XL responded that, as of September 13, 2011, it had not received notice of any claims from BioChemics.

On November 9, 2011, Brown & Brown sent BioChemics a proposal for D&O coverage with a different carrier, AXIS. Page 4 of the proposal states under the heading "Requirements":

> REQUIREMENTS PRIOR TO BINDING
> The following items must be received and accepted by the underwriter(s) prior to binding. Underwriters reserve the right to amend/rescind terms until such time the required documents have been received, reviewed, and deemed satisfactory and acceptable.
> AXIS NEW BUSINESS APPLICATION
> CONFIRMATION THAT ALL KNOWN CLAIMS HAVE BEEN NOTICED TO PRIOR CARRIER
> CONFIRMATION THAT THERE HAS BEEN NO MATERIAL CHANGE IN RISK PROFILE BETWEEN DATE OF QUOTE AND INCEPTION.

Docket # 109, Ex.OO (AXIS Policy Proposal). The same requirement ("CONFIRMATION THAT ALL KNOWN CLAIMS HAVE BEEN NOTICED TO PRIOR CARRIER") appears again at page 7 of the proposal, under the heading "CONDITIONS TO BIND." Id. BioChemics endorsed the proposal the following day, and AXIS issued a policy effective for claims made from November 13, 2011, to November 13, 2012 ("the AXIS policy"). Like the XL policy, the AXIS policy was issued on a claims made basis, and states as much in large, bold font on the policy's first page.

### B. The SEC Investigation and Parties' Response

The SEC commenced a Non-Public Formal Investigation targeting BioChemics and its officers by Formal Order on May 5, 2011, styled "In the Matter of BioChemics, Inc. (B-02641)" (the "SEC Investigation"). The SEC served a series of document subpoenas on BioChemics pursuant to the investigative order, including on May 9 and

September 12, 2011. Those subpoenas indicated the existence of the Formal Order and were captioned "In the Matter of BioChemics, Inc. (B-02641)."

In May 2011, plaintiffs retained counsel to represent them in the SEC investigation and consulted counsel whether to report the investigation to their insurer. Additional subpoenas issued in January and March 2012 under the same SEC matter identification and number. BioChemics notified AXIS of the SEC investigation on March 29, 2012. AXIS denied coverage, viewing the entire SEC investigation as a single "claim" first made in May 2011, when the SEC issued its first document subpoena to BioChemics—before the AXIS policy took effect. BioChemics notified Brown & Brown of the SEC investigation in July 2012 and instructed Brown & Brown not to contact XL or AXIS concerning the investigation. On August 2, 2012, Brown & Brown took the position that Masiz should report the claim to XL. Masiz, through counsel, declined to do so by email dated August 8, 2012. The SEC filed an enforcement action against plaintiffs in December 2012.[1]

On February 27, 2013, plaintiffs filed the present suit in the Massachusetts Superior Court against AXIS, Brown & Brown, and Raucci. Defendants removed the case to federal court on March 27, 2013, based on diversity jurisdiction. On January 6, 2015, I granted AXIS's motion for summary judgment, ruling that the SEC investigation and enforcement action were not covered under AXIS's policy because the SEC's

---

[1] The enforcement action alleged that from 2009 until mid-2012, BioChemics and Masiz had engaged in a fraudulent scheme to sell BioChemics securities by misleading investors about the company's value. The action terminated in a 2015 judgment requiring BioChemics to disgorge gains as well as pay a civil penalty.

Formal Order was issued prior to AXIS's policy period.  See Docket # 88, at 5–6.  The remaining defendants, Brown & Brown and Raucci, now move for summary judgment.

## II.     Legal Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.'"  Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004) (quoting Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993)).  In determining whether a genuine issue of material fact exists, "a court must view the evidence 'in the light most favorable to the opposing party.'"  Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).

## III.    Analysis

### A.     Negligence and Breach of Fiduciary Duty

Plaintiffs' negligence and fiduciary duty theories (Counts II-V) rely on the assertion that defendants failed to advise BioChemics on the risks associated with the expiration of the XL policy.  Masiz explains that he did not understand that the SEC action amounted to a reportable claim, but that had defendants properly advised him prior to the expiration of the XL policy in November 2011, he would have preserved BioChemics's coverage under the XL policy by reporting the action.  Plaintiffs further contend that, had defendants specifically asked them at the time of policy renewal

5

about any potential claims, Masiz would have perceived the coverage significance of the SEC action.

"To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Jupin v. Kask, 849 N.E.2d 829, 834–35 (Mass. 2006).[4]

Insurance brokers do not generally owe a fiduciary duty to the insured. See Robinson v. Charles A. Flynn Ins. Agency, Inc., 653 N.E.2d 207, 207–08 (Mass. App. Ct. 1995). Instead, the broker "[o]rdinarily . . . assumes only those duties normally found in an agency relationship." Baldwin Crane & Equipment Corp. v. Riley & Rielly Ins. Agency, Inc., 687 N.E.2d 1267, 1269 (Mass. App. Ct.1997) (quoting 16A Appleman, Insurance Law & Practice § 8836, at 64 (1981)). These duties include the duty to deal in good faith and the duty to carry out instructions, but do not include the duty to advise. See Appleman, § 8836, at 64. Thus, a broker is not generally required to ensure that the insured understands "the full import" of a policy provision, and an insured remains responsible for ascertaining the terms of coverage obtained by the broker. See Baldwin, 687 N.E.2d at 1269. Moreover, "[t]here is no general duty of an insurance agent to ensure that the insurance policies procured by him provide coverage that is adequate for the needs of the insured. Such a duty only arises under special

---

[4] Both parties assume Massachusetts law applies in this diversity case. Accordingly, I rely on Massachusetts law. See Magarian v. Hawkins, 321 F.3d 235, 238 n.4 (1st Cir. 2003) ("While a federal court sitting in diversity must apply the forum state's choice-of-law rules, . . . the court may accept the parties' agreement as to the choice of law without independent analysis of the governing rules." (citations omitted)).

circumstances of assertion, representation and reliance." AGA Fishing Group Ltd. v. Brown & Brown, Inc., 533 F.3d 20, 23 (1st Cir. 2008) (citations omitted).

Whether "special circumstances" exist is generally a question of fact. McCue v. Prudential Ins. Co., 358 N.E.2d 799, 801 (Mass. 1976). Special circumstances may include a longstanding relationship between the broker and the insured, or reliance by the insured on the broker for advice. See Thrivent Fin. for Lutherans v. Strojny, 882 F. Supp. 2d 260, 267 (D. Mass. 2012). In McCue, for example, the court found a duty where the broker persuaded plaintiffs, with whom he had a close, twenty-eight year relationship, to change their coverage but left them uninsured. 358 N.E.2d at 801–02. Similarly in Bicknell, Inc. v. Havlin, a broker holding himself out as an expert assured plaintiffs that they had blanket coverage when he had actually obtained only specific coverage. 402 N.E.2d 116, 118–19 (Mass. App. Ct. 1980).

Here, plaintiffs allege that special circumstances arose via BioChemics's relationship with Kroning, the consultant who first introduced them to Brown & Brown's corporate predecessor. See Docket # 112, at 12 ("Based on its obvious inexperience in the field, BioChemics sought the assistance of Kroning, an individual who had a relationship with Masiz for over a decade and who had been working for BioChemics as a paid business consultant since 2005."). Although plaintiffs claim "heightened" reliance on Kroning based on his role as business and insurance consultant to the company, see id., they have presented no evidence of representations made by Kroning on which they relied. Instead, plaintiffs essentially claim that Brown & Brown owes a fiduciary duty by virtue of having inherited the consulting relationship between Kroning and Masiz.

7

But even if Kroning ever owed Masiz a fiduciary duty, which plaintiffs have not shown, it is difficult to see how that duty animates defendants' handling of typical brokerage services. The defendants worked annually with plaintiffs to obtain competitively priced insurance coverage, but Masiz cannot recall ever seeking specific advice from anyone at Brown & Brown with respect to insurance or coverage issues, nor does he claim that anyone at BioChemics had sought such advice. Rather, Masiz had a general expectation that defendants would provide adequate coverage. See Docket # 109-21 (Deposition of John Masiz), at 64–65; Docket #112-3 (Affidavit of John Masiz), at ¶ ¶ 5–9. The law does not generally protect this expectation, see AGA Fishing Group, 533 F.3d at 23, and theirs was an ordinary agency relationship. See RLI Ins. Co. v. Wood Recycling, Inc., No. CIV.A.03-10196-RWZ, 2006 WL 839514, at *8 (D. Mass. Mar. 30, 2006) (allowing summary judgment for broker and finding no special circumstances giving rise to duty despite longstanding broker-insured relationship, where broker provided typical services rather than expert advice).

Plaintiffs were contractually obligated to report all known claims to their D&O carrier and confirmed that they had done so by signing the AXIS policy proposal. Defendants were entitled to accept this representation and were under no duty to ferret out potential claims left unreported. Cf. Sullivan v. Manhattan Life Ins. Co. of New York, 626 F.2d 1080, 1082 (1st Cir. 1980) (law does not allow a sophisticated insurance applicant "to leave entirely to the soliciting insurance agents the burden of affirmatively inquiring whether an express representation of the absence of [a potential claim] to which the applicant has appended his signature, is false or in need of explanation or

modification.").[5] Where plaintiffs have adduced no evidence of special circumstances from which a reasonable jury could conclude that defendants owed a fiduciary duty of care, defendants are entitled to summary judgment on Counts II through V.

**B. Massachusetts General Laws, Chapter 93A**

The plaintiffs further allege in Counts VI and VII that the defendants' actions constitute unfair and deceptive acts in violation of Massachusetts General Laws chapter 93A, § 2. Plaintiffs contend that defendants violated General Laws chapter 175, § 162I and sought to conceal that violation. See Mass. Gen. Laws c. 175, § 162I ("A person shall not sell, solicit or negotiate insurance in the commonwealth for any class or classes of insurance unless the person is licensed for that line of authority in accordance with sections 162H to 162X, inclusive"). Plaintiffs allege that Brown & Brown violated chapter 93A by selling insurance in Massachusetts without a license in violation of General Laws chapter 175, § 162I. Specifically, plaintiffs assert that Brown & Brown's listed licensee, "Brown & Brown Insurance Agency," is distinct from the entity with whom they did business – named defendant Brown & Brown of New York, Inc. See Docket # 109-54 (Brown & Brown Insurance Agency's Producer License). Plaintiffs further contend that because Brown & Brown failed to obtain a license, defendants unfairly and deceptively sold insurance to BioChemics under Raucci's license despite Raucci's lack of involvement with plaintiffs' account.

---

[5] It bears noting that Masiz admits to understanding as early as 2004 the need to promptly report similar potential claims to his insurer, and to having done so in a prior SEC action against a subsidiary wholly owned by plaintiffs. See Docket #109-21 (Deposition of John Masiz), at 23–26. See also Docket # 109-16, Sec. and Exchange Commission v. Vaso Active Pharmaceuticals and John Masiz, Civil Action No. 04-CV-01395 (D.D.C. August 17, 2004).

"Under Chapter 93A, an act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers'" or competitors. Walsh v. TelTech Sys., Inc., 821 F.3d 155, 159 (1st Cir. 2016) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 918 (Mass. 1975)).

Even assuming that Brown & Brown was not properly licensed pursuant to General Laws chapter 175, § 162I, plaintiffs have established no causal connection between the alleged 93A violation and their denial of coverage in the underlying SEC action. See Mass. Farm Bureau Federation, Inc. v. Blue Cross of Mass., Inc., 532 N.E.2d 660, 665 (1989) ("In the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery."). Accordingly, summary judgment is ALLOWED on Counts VI and VII.

## IV. Conclusion

The defendants' motion for summary judgment is ALLOWED on Counts II through VII.

Judgment may be entered for defendants Brown & Brown of New York on Counts II, IV and VI and for John P. Raucci on Counts III, V and VII.

The court having earlier allowed the motion for summary judgment of defendant Axis Reinsurance Company (Docket # 88), judgment for that defendant may be entered on Count I.

|   September 28, 2017   | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |